Name: BRIAN A. BLOOM
Address: 910 Franklin Avenue
City, State, Zip: Garden City, NY 11530
Phone: 212-574-0350
Fax: 212-216-8001
E-Mail: bbloom@tarterkrinsky.com

☐ FPD   ☐ Appointed   ☐ CJA   ☐ Pro Per   ☒ Retained

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

PAIGE LLC,

PLAINTIFF(S),

v.

SHOP PAIGE LLC,

DEFENDANT(S).

CASE NUMBER:

2:22-cv-07800 HDV (SKx)

**NOTICE OF APPEAL**

NOTICE IS HEREBY GIVEN that _SHOP PAIGE LLC_ hereby appeals to
*Name of Appellant*
the United States Court of Appeals for the Ninth Circuit from:

## Criminal Matter

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

## Civil Matter

☒ Order (specify): granting Plaintiff's Motion for Equitable Relief and Attorneys' Fees and Costs

☐ Judgment (specify):

☐ Other (specify):

Imposed or Filed on _____. Entered on the docket in this action on 07/10/2024.

A copy of said judgment or order is attached hereto.

07/26/2024
Date

/s/ Brian Bloom
Signature

☐ Appellant/ProSe   ☒ Counsel for Appellant   ☐ Deputy Clerk

**Note:**  The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party. Also, if not electronically filed in a criminal case, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PAIGE LLC,

         Plaintiff,

v.

SHOP PAIGE LLC,

         Defendant.

Case No. 2:22-cv-07800-HDV (SKx)

**ORDER GRANTING PLAINTIFF PAIGE, LLC'S MOTION FOR EQUITABLE RELIEF AND ATTORNEYS' FEES AND COSTS [DKT. NO. 93]**

## I. INTRODUCTION

Plaintiff Paige, LLC ("Paige") filed the present action against Defendant Shop Paige LLC ("Shop Paige") alleging trademark infringement and related claims on the use of the "PAIGE" mark in online and retail stores. The Court granted Paige's Motion for Summary Judgment [Dkt. No. 83] on February 16, 2024. Paige now moves for a Motion for Equitable Relief and Attorneys' Fees and Costs [Dkt. No. 93].

For the reasons discussed below, Paige's Motion is granted. The Court previously found that Shop Paige continuously and willfully infringed Plaintiff's "Paige" trademark, and today enjoins future violations as more specifically described herein. The Court further finds that Paige is entitled to disgorgement of profits, and awards them in the amount of **$2,572,667.89**. Finally, the Court finds that the present action is considered "exceptional" under the Lanham Act and on that basis awards attorney's fees and costs in the amount of **$430,123.19** and expert fees of **$35,660.75**.

## II. BACKGROUND

A lengthy factual background of this case is discussed in the Court's Order Granting Plaintiff's Motion for Summary Judgment. ("Summary Judgment") [Dkt. No. 83] at 2–4. The Court will not repeat all those details here, except to summarize the basics of the dispute.

Paige is a high-end apparel brand with a national presence that designs, markets, and distributes apparel, footwear, and accessories. Complaint ¶ 8 [Dkt. No. 1]. In 2004, Paige filed for the PAIGE mark and now owns multiple registered trademarks for the PAIGE mark. Statement of Undisputed Facts ("SUF") ¶¶ 2–3, 114 [Dkt. No. 59-1] (U.S. Reg. Nos. 3308211, 4128766, 4237703, 5523189, 5682917, 6053489, 6694369). Paige has utilized its trademark in connection with its physical retail stores featuring apparel since 2005, and with its online retail services since 2006. *Id.* ¶¶ 8–9.

Defendant Shop Paige markets and sells jewelry. SUF ¶¶ 95-8. Shop Paige has used the mark "**SHOP**PAIGE" since 2018. *Id*. ¶¶ 5, 95–96. On October 25, 2022, Paige brought claims against Shop Paige for (1) trademark infringement under 15 U.S.C. § 1114; (2) unfair competition; (3) false advertising; (4) federal trademark dilution; (5) cyberpiracy; (6) trademark infringement under common law; and (7) unfair business practices. Complaint ¶¶ 26–95. On February 16, 2024,

2

the Court granted Plaintiff's Motion for Summary Judgment on its trademark infringement and unfair competition claims. Summary Judgment Order at 2 [Dkt. No. 83].

On May 2, 2024, Plaintiff filed a Motion for Equitable Relief and Attorneys' Fees and Costs ("Motion") [Dkt. No. 93], seeking permanent injunction, disgorgement of profit, and an award of its attorneys' fees and costs.[1]

### III. PERMANENT INJUNCTION

#### A. Legal Standard

The Lanham Act "vests district courts with the power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006) (citing 15 U.S.C § 1116(a)). The decision of whether to grant or deny permanent injunctive relief is an act of equitable discretion by the district court. *See, e.g.*, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

#### B. Discussion

Paige seeks to enjoin Defendant from using, registering, applying to register, or otherwise acquiring any registration of, or for any of, Plaintiff's marks, including but not limited to Defendant's current use of the infringing mark "ShopPaige". Plaintiff must demonstrate the following to be entitled to a permanent injunction: (1) it has suffered irreparable harm; (2) remedies available are inadequate to compensate injury; (3) consideration of the balance of hardships between Plaintiff and Defendant favors Plaintiff; and (4) public interest would not be disserved by a permanent injunction. *Blumenthal Distributing, Inc. v. Comoch Inc.*, 652 F. Supp. 3d 1117, 1135 (C.D. Cal. 2003); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

##### a. Irreparable Harm

A plaintiff seeking permanent injunction "shall be entitled to a rebuttable presumption of

---

[1] On May 16, 2024, Defendant filed its Opposition ("Opp.") [Dkt. No. 96]. On May 23, 2024, Plaintiff filed its Reply [Dkt. No. 99]. On June 6, 2024, the Court heard oral argument and took the matter under submission [Dkt. No. 104].

irreparable harm upon a finding of likelihood of success on the merits for a violation identified in this subsection." 15 U.S.C. § 1116(a).  Here, the Court has granted summary judgment in favor of Paige on its trademark infringement claims.  In doing so, the Court specifically found that Plaintiff owns the relevant mark and that Defendant's use of the infringing mark "ShopPaige" creates a likelihood of confusion in the marketplace.  Summary Judgment Order at 2.  Paige is therefore entitled to a rebuttable presumption of irreparable harm.  Monetary damages are not sufficient to address the *ongoing* harm caused by Defendant's use of the infringing mark.

Defendant opposes the request for equitable relief by pointing out that Paige did not assert or introduce a single incident of actual consumer confusion.[2]  Opp. at 1–3.  But that is not required and Defendant does not cite to any applicable authority to the contrary.  Here, the Court's Summary Judgement Order discussed at length its findings that "the marks are nearly identical, the relatedness of the goods is undoubtedly substantial, the Plaintiff's mark is unquestionably strong."  Summary Judgment Order at 2.  Further, the Court found that likelihood of confusion was supported given "the parties' simultaneous use of online marketing" and "the striking degree of overlap in Google search results for the two marks."  *Id.*  Irreparable harm has been established.

### b. Inadequate Remedies at Law

"Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d at 1175, 1180 (9th Cir. 1988).  Defendant continues to use the infringing mark **SHOP**PAIGE *to this day*, despite the Court granting Plaintiff's motion for summary judgement in its entirety.[3]  Defendant's ongoing infringement of Plaintiff's trademarks continues to harm Plaintiff.  Legal remedies, such as monetary damages, are not enough to compensate Plaintiff for Defendant's ongoing infringement.  This necessary element is satisfied.

---

[2] Defendant Shop Paige LLC's Opposition to Plaintiff's Motion For Equitable Relief and Attorneys' Fees and Costs ("Opposition") [Dkt. No. 96].

[3] ShopPaige website, https://shoppaigeny.com/ (last accessed July 7, 2024).

4

### c. Balance of Hardships

The Court finds that the balance of hardships favors the Plaintiff here. In the absence of injunctive relief, Defendant will undoubtedly continue to infringe on Paige's trademark, taking away sole control of the mark from its legal owner and depriving Plaintiff of the ability to prevent any resulting harm to its brand. For its part, Shop Paige has failed to show how equitable relief will cause it any undue harm *independent* of its continuing use of the infringing mark.

Shop Paige asserts that its online marketing and Google optimization would be harmed if it is prohibited from using the **SHOP**PAIGE mark. But that argument is precisely what the law does not countenance because it relies on continued infringement. *See Nintendo of America, Inc. v. Storman*, No. CV-19-7818-CBM-(RAOx), 2021 WL 4780329 at *9 (C.D. Cal. Aug. 5, 2021); *see also Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 829 ( 9th Cir. 1997) ("[A] defendant who knowingly infringes another's copyright cannot complain of the harm that will befall it when properly forced to desist from its infringing activities.") (citation omitted). Indeed, such online search optimization highlights why Defendant's infringement is so harmful, as Shop Paige can utilize Paige's earned credibility to gain sales based on brand confusion.

### d. Public Interest

Finally, the Court finds that the public interest is served by upholding Plaintiff's rights under the Lanham Act. Consumers have an interest in accurate information about the products they are buying. *See Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d. 985, 993 n.5 (9th Cir. 2009) ("The public has an interest in avoiding confusion between two companies' products."). Applying that principle, the public interest is served by avoiding the strong likelihood of confusion in the marketplace caused by Defendant's continued use of the term "Shop Paige."

### e. Equitable Relief

In summary, the Court finds that Paige has established an entitlement to injunctive relief under the factors laid out in *eBay, supra*. Accordingly, the Court hereby issues the following Order:

1. Defendant, all of its agents, licensees, employees, officers, directors, representatives, attorneys, predecessors, successors, assigns, and all those acting in concern or privity with them who receive actual notice of this Judgment by personal service or otherwise, including,

without limitation, Defendant's founder and Chief Executive Officer, Paige Restivo ("Restivo") are hereby enjoined and prohibited:

    a. from using, registering, applying to register, or otherwise acquiring any registration of or for:

        i. any of Defendant's Marks, or any variation on any them, including, without limitation, SHOP PAIGE, SHOPPAIGE NEW YORK, SHOP PAIGE NEW YORK, SHOPPAIGE NEW YORK BY PAIGE ELISIA, and SHOP PAIGE NEW YORK BY PAIGE ELISIA, or any stylized, design, or logo mark incorporating any of the foregoing, for or in connection with the import, manufacture, advertising, promotion, sale, offer for sale, or distribution of, apparel, footwear, accessories, including, without limitation, belts, and scarves, purses, handbags, sunglasses, eyewear, jewelry, or any other goods or services related thereto, including, any and all goods in International Classes 9, 14, 18, and 25 (the "Prohibited Goods"), or online or brick-and-mortar retail store services featuring any of the Prohibited Goods (the "Prohibited Services"); or

        ii. the term PAIGE, by itself or combined only with one or more words or elements that are descriptive of or generic for any of the Prohibited Goods or the Prohibited Services, as or as a part of any trademark, service mark, trade name, business or corporate name, domain name (including, without limitation, shoppaigeny.com, or any user name, profile name, page name, screen name, handle or the like for any website, social media page or profile, or other online platform or location, including, without limitation, SHOP PAIGE, SHOPPAIGE NEW YORK, SHOP PAIGE NEW YORK, SHOPPAIGE NEW YORK BY PAIGE ELISIA, and SHOP PAIGE NEW YORK BY PAIGE ELISIA, and shoppaigeny.com, for or in connection with the import, manufacture, advertising, promotion, sale, offer for sale, or distribution of either the Prohibited Goods or the Prohibited Services;

|   |   |   |
|---|---|---|
| 1 |  | b. from forming any business entities or organizations to avoid or evade the restrictions set forth in this judgment and injunction or in any way assisting any third party to engage in any conduct that would violate the restrictions in this judgment and injunction; |
| 5 | 2. | Defendant, all of its agents, licensees, employees, officers, directors, representatives, attorneys, predecessors, successors, assigns, and all those acting in concern or privity with them who receive actual notice of this Judgment by personal service or otherwise, including, without limitation, Defendant's founder and Chief Executive Officer, Paige Restivo ("Restivo") are hereby directed to destroy all materials, including, without limitation, all labels, signs, prints, packages, advertisements, books, and pamphlets bearing Defendant's Marks or any other marks the use of which is prohibited by this judgment and injunction; and are hereby directed to, within thirty (30) days from the date of this judgment and injunction, to file with this Court a report setting forth the manner and form in which Defendant has complied with this judgment and injunction. |

## IV. DISGORGMENT OF PROFITS

### A. Legal Standard

The Lanham Act provides that once trademark infringement has been established, the "plaintiff shall be entitled…subject to the principles of equity, to recover defendant's profits." *Monster Energy Company v. Integrated Supply Network, LLC*, 533 F. Supp. 3d 928, 933 (C.D. Cal 2021) (citing 15 U.S.C § 1117). District courts are afforded broad discretion in the forging of a remedy, with the goal of "mak[ing] acts of deliberate trademark privacy unprofitable." *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 982 F.2d 117, 122-23 (9th Cir. 1993).

### B. Discussion

Disgorgement of profits is "subject to the principles of equity." 15 U.S.C. § 1117. Courts should evaluate the following equitable considerations: "(1) defendant's mental state, such as whether the [defendant had the intention to confuse or deceive]; (2) whether sales have been diverted; (3) the adequacy of other remedies; (4) any unreasonable delay by the plaintiff in asserting [the plaintiff's] rights; (5) the public interest in making the misconduct unprofitable; and (6) whether

7

it is a case of palming off." *Yuga Labs, Inc. v. Ripps*, No. CV 22-4355-JFW-(JEMx), 2023 WL 7089922 *10 (C.D. Cal. Oct. 25, 2023) (quoting *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, No. SACV-17-01613-CJC-(DFMx), 2023 WL 2652855 at *4 (C.D. Cal Mar. 13, 2023). Courts have wide discretion to fashion a remedy based on the totality of the circumstances. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1146 (9th Cir. 1997).

### a. Defendant's State of Mind

While there is no requirement that a defendant's infringement be "willful" for disgorgement of profits, a defendant's mental state is still an important consideration in determining whether disgorgement of profits is appropriate. *See Romag Fasteners, Inc v. Fossil, Inc.*, 590 U.S. 212, 219 (2020). Here, the record strongly supports a finding that Defendant willfully infringed Plaintiff's trademark. Paige is an apparel brand with a widespread national presence since 2004. Complaint ¶¶ 13, 15. A side-by-side visual comparison of Paige's and Shop Paige's marks reveals them to be nearly identical. Summary Judgment at 2, 7 ("A picture is worth a thousand words"). While the founder of Shop Paige states that she had no prior knowledge of the Paige mark when she started her business, Declaration of Paige Restivo ("Restivo Decl.") ¶ 4 [Dkt. No. 54-35], the Court finds this assertion to be highly improbable. But even if she were unaware of the Paige mark when she started the business, it is not plausible that such ignorance would last for multiple years. Both Paige and Shop Paige use the internet "as a substantial marketing and advertising channel." *See* SUF ¶¶ 97–100 (both parties promote and sell their goods online and through Instagram). It strains credulity to maintain that Shop Paige, run by a self-avowed designer, would be completely ignorant of a national brand operating for fourteen years in similar industries, with a very similar name, and a nearly indistinguishable mark. And Shop Paige's willful infringement is displayed by Shop Paige's continuous use of the infringing mark to this day.

### b. Diversion of Sales

Neither Paige or Shop Paige have provided evidence of any actual diversion of sales. Plaintiff's motion only provides a summation of Defendant's total sales from September 2018 through May 2023, without a mention "to whether any of those sales were related in any way to Shop Paige's alleged infringement of the PAIGE mark." Expert Report by Barry L. Bell (Barry's

8

Report) ¶ 29 [Dkt. No. 105].

### c. Inadequacy of other Remedies at Law

When the "threat of injury is imminent and the measure of that injury defies calculation, damages will not provide a remedy at law." *Harbor Breeze Corp.*, 2023 WL 2652855 at *7 (internal citation omitted). Disgorgement of one's profits is at times necessary to deter a defendant whose misconduct is "deliberate and willful." *Playboy Enters., Inc. v. Baccarat Clothing Co.*, Inc., 692 F.2d 1272, 1274 (9th Cir. 1982). In *Playboy Enterprises, Inc*, the Ninth Circuit found the district court abused its discretion in failing to award disgorgement of profits after it awarded the plaintiff compensatory damages equal to one-tenth of the profits earned from the defendants' infringement. *Id.* at 1275. The *Playboy Enterprises, Inc* court emphasized "the trial court's primary function should center on making any violations of the Lanham Act unprofitable to the infringing party." *Id.* at 1274. This consideration strongly supports disgorgement of profits as Shop Paige has failed to change any of its infringing marks even in the time since the Court's summary judgment order.

### d. Unreasonable Delay

There was no unreasonable delay by Paige in asserting its trademark rights. Paige became aware of Shop Paige in September 2022, sent a cease and desist letter almost immediately, and filed this lawsuit less than two months later. *See* Declaration of Jessica Bromall Sparkman ("Sparkman Decl.") [Dkt. No. 92] ¶ 12, Exhibit I (at ¶ 18); ¶ 13, Exhibit J (at ¶ 27). The Court finds this factor to favor disgorgement.

### e. Palming Off

"Palming off" involves the selling of a good or services of one person's creation under the mark of another. *Lamothe v. Atl. Recording Corp.*, 847 F.2d 1403, 1406 (9th Cir. 1988). Defendant's conduct does not constitute palming off. While Plaintiff and Defendant do have similar marks, there has been no suggestion that Shop Paige attempts to "pass off" as Paige.

### f. Disgorgement of Profits

Considering all the briefing and Plaintiff's subsequent actions, the Court finds that Shop Paige has willfully infringed Paige's trademarks and that principles of deterrence and equity favor profit disgorgement of profits.

9

The Court must now assess Defendant's profit from its infringement. Under the Lanham Act, "the plaintiff shall be required to prove defendant's sales only; **defendant** must prove all elements of cost or deduction claimed." 15 U.S.C.§ 1117 (emphasis added).

Here, Defendant admitted its total sales from September 2018 through the end of 2022 are $2,368,077.89. Motion, Exhibit L. Defendant has also produced a document reflecting gross sales of $204,590 for January through May of 2023. Motion, Exhibit M. With these documents, Plaintiff has met the burden of proving Defendant's sales of $2,572,667.89 from September 2018 through May 2023.

Defendant claims over $2 million in cost deductions but has produced essentially no concrete evidence to the Court to support the deductions alleged. Not a single invoice, receipt, or other original source document has been produced in support of Defendant's expenses. *See*, *e.g.*, *Vital Pharms. v. PhD Mktg., Inc.*, No. CV 20-06745-RSWL-(JCx), 2022 WL 2952495 at *4 (C.D. Cal. July 26, 2022). Instead, the only document Shop Paige has offered in support of its claimed deductions is Mr. Barry L. Bell's purported expert report, which contains a summary chart of Shop Paige's Profit and Losses, labeled "Schedule 1," from September 2018 through May 2023.[4] But there is no evidence to support the specific figures set forth in Schedule 1. Mr. Bell relies on "Shop Paige's profit and loss statements" and where those did not exist, he relied on "spreadsheet summaries of expenses" that were in a different format with some labeled "approx." Expert Report of Barry L. Bell ¶ 32. Indeed, Defendant failed to provide a single source document to support the dubious conclusion that over four and half years of business, ShopPaige generated only $20,045 in profits off over $2 million in sales. *Id.* ¶ 33. Since the burden here lies with Defendant, Shop Paige could have produced documentary evidence, requested time for additional discovery to clarify such expenses, or explained why the Court should rely on Mr. Bell's report. Instead it simply referred to

---

[4] *See* Declaration of Brian Bloom, Exhibit A, "Expert Report of Barry L. Bell" at [Dkt. No. 105]. Defendant Shop Paige failed to submit this declaration and report in its original Opposition, and only submitted after being ordered to by the Court at the oral argument. In any event, Plaintiff filed a motion to strike the expert report as untimely, because it was submitted after the close of expert discovery and did not afford the Plaintiff an opportunity to depose Mr. Bell. [Dkt No. 65]. The Court hereby **grants** the motion to strike Mr. Bell's report.

10

Mr. Bell's report for its conclusion that "profits here are *de minimis*"—without including any of the specifics such a deductions inquiry requires. Opp. at 4. No additional discussion related to deductions of profits was included in Defendant's briefing. *See id.* at 4–6.

Courts in this Circuit have similarly found that summary financial documents, absent any evidence, were insufficient to satisfy the defendant's burden to prove deductions. *See Brighton Collectibles, LLC v. Believe Production, Inc.*, No. 2:15–cv–00579–CAS(ASx), 2018 WL 1381894, at *7 (C.D. Cal. Mar. 15, 2018) (declining to deduct cost where only evidence in support of cost was witness testimony and spreadsheets produced by the witness); *see also Brighton Collectibles, Inc. v. Marc Chantal USA, Inc.*, No. 06-CV-1584 H (POR), 2009 WL 10674076, at *10 (S.D. Cal. Aug. 12, 2009) (declining to deduct costs because defendant "did not submit any documentary evidence such as invoices to substantiate its claimed deductions").

Defendant has failed to meets it burden of proving expenses. Thus, the Court declines to make any deduction from gross sales. *See Vital Pharms.*, 2022 WL 2952495 at *5; *see also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514 (9th Cir. 1985) (citing *Russell v. Price*, 612 F.2d 1123, 1130–31 (9th Cir. 1979) ("If the infringing defendant does not meet its burden of proving costs, the gross figure stands as the defendant's profits.")).

Accordingly, the Court awards Plaintiff $2,572,667.89 in disgorgement of profits.

## V. ATTORNEY'S FEES AND COSTS

### A. Legal Standard

Section 35(a) of the Lanham Act provides that "[t]he court in *exceptional cases* may award reasonable attorney's fees to the prevailing party." 15 U.S.C. § 1117(a) (emphasis added). An exceptional case is one "that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)) (extending the Supreme Court's directives in *Octane* to the attorney's fees analysis under the Lanham Act).

*SunEarth* altered the test for determining what constitutes an "exceptional case" within the

meaning of the Lanham Act. *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1223 n.13 (9th Cir. 2023). Now, in determining whether a case is exceptional, "district courts … should examine the totality of the circumstances to determine if the case was exceptional … using a preponderance of the evidence standard." *SunEarth, Inc.*, Ltd., 839 at 1181. The Court can consider nonexclusive factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness, LLC*, 572 U.S. at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)); *see also San Diego Comic Convention v. Dan Farr Productions*, 807 Fed. App'x 674, 676 (9th Cir. 2020) (holding that the district court did not abuse its discretion in granting an award of attorney's fee where the court focused on unreasonable manner in which Defendants litigated the case, such as "failure to comply with court rules … and unreasonable responses to the litigation.").

### B. Discussion

Considering the totality of circumstances applicable in this action, the Court concludes that Plaintiff is entitled to its reasonable attorneys' fees. Because the *SunEarth* test is less stringent than the willful infringement standard, it stands to reason that a finding of willfulness would go a long way towards satisfying the test. *See, e.g., Jason Scott Collection, Inc.*, 68 F.4th at 1223 n.13. Again, it is simply not plausible to maintain or believe that Shop Paige was ignorant of a national brand operating in similar industries, with a very similar name, and a nearly indistinguishable mark. And again, Defendant continues to use the infringing mark despite Plaintiff filing this instant lawsuit, sending a cease and desist letter, and the Court granting summary judgment for the Plaintiff. To this day, Defendant uses the **SHOP**PAIGE mark on its website, infringing on Plaintiff's trademark despite the plain terms of this Court's Summary Judgment Order.

In addition, "the unreasonable manner" in which Defendant litigated this case also supports deeming this case exceptional. *Octane Fitness*, 572 U.S. at 554. Shop Paige has ignored deadlines and provided little to no legal authority in support of its arguments.[5] As just one example,

---

[5] Throughout Shop Paige's nineteen-page Opposition, it cites to only six cases to support its

Defendant failed to timely disclose its expert Mr. Barry L. Bell. *See* Order Modifying Scheduling Order [Dkt No. 47 at 2]; *see also* Declaration of Lena Streisand ("Streisand Decl."), Ex. B, C, D, E, F, G, and H [Dkt. No. 65-2]. While Paige timely disclosed its expert Forrest Vickery on October 13, 2023, Shop Paige failed to timely serve rebuttal expert disclosures on October 27, 2023. Shop Paige did not serve Mr. Barry L. Bell's report until January 11, 2024, nearly three months after the court-ordered deadline, and two months after the expert discovery cut-off of November 13, 2023. As a result Plaintiff was unable to conduct any deposition of Defendant's damages expert.

Accordingly, in light of Shop Paige's willful infringement, unreasonable conduct throughout this litigation, and weak legal positions on the merits (not frivolous but bordering on the frivolous), the Court concludes that this is an exceptional case entitling Plaintiff to its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

### C. Calculation of Attorneys' Fees and Costs

A determination of an attorneys' fee award begins by calculating the "lodestar." *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000). To do so, a court must multiply the number of hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in the community for similar work. *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999). District courts "may exclude from the fee requests any hours that are 'excessive, redundant, or otherwise unnecessary,'" *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)), and may rely "on their own knowledge of customary rates and their experience concerning reasonable and proper fees," *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

---

arguments. Only one case, *Cairns v. Franklin Mint Co.*, is within the Ninth Circuit, and it states that exceptional cases must be "either groundless, unreasonable, vexatious, or pursued in bad faith." 292 F.3d 1139, 1156 (9th Cir. 2002). However, this case was overruled by *SunEarth*. 839 F.3d at 1181 (The Ninth Circuit concludes "*Octane Fitness* and *Highmark* have altered the analysis of fee applications under the Lanham Act … analyzing a request for fees under the Lanham Act should examine the "totality of the circumstances"). Defendant has simply failed to cite relevant case law in this Circuit in support of its conclusory arguments.

### a. Reasonable Rates

Turning to Plaintiff's hourly rate, the Court finds such rates are reasonable. A hourly rate is deemed reasonable by the market rates in the relevant community for "similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Paige provides adequate documentation to establish reasonable hourly rates based on its legal counsel JMBM's size, expertise, and reputation in trademark litigation and counseling. Sparkman Decl. ¶¶ 38–41, Exhibits Y, Z. JMBM has over 100 attorneys, with the principal attorneys involved in this case having devoted much of their career to trademark law.[6]

The rates sought are consistent with the prevailing market rates within the Central District of California. The request rates for the JMBM's attorneys range from $515 to $994. *Id.* ¶ 36. Courts within the district have approved of such rates for similar attorneys. *N.T.A.A. v. Nordstrom, Inc.*, No. 2:21-CV-00398-DDP-(AGRx), 2024 WL 1723524 at *4 (C.D. Cal. Apr. 19, 2024) (approving rates of $848 to $1,346.70 for partners and senior counsel who contributed to Nike's defense); *AK Futures LLC v. Smoke Tokes, LLC*, No. 8:21-cv-1061, 2022 WL 3574280, at *2 (C.D. Cal. Jan. 13, 2022) (approving rate of $1,137.50 for a partner reasonable given his expertise in intellectual property); *Hope Med. Enterprises, Inc. v. Fagrgon Compounding Serv., LLC*, No. 2:19-CV-07748-CAS-(PLAx), 2022 WL 826903, at *3 (C.D. Cal. Mar. 14, 2022) (approving rates of $565 to 985 for associates at King & Spaulding). Thus, the Court finds the requested hourly rates as reasonable.

Defendant argues that Plaintiff's attorneys fees are excessive and unwarranted given the litigation path, but provides no evidence or reference to legal authority to demonstrate excessiveness. Defendant's conclusory assertions to Plaintiff's billing records fall short of rebutting that Plaintiff's hourly are reasonable. *See Hiken v. Dep't of Def.*, 836 F.3d 1037, 1045 (9th Cir. 2016) (noting that the party opposing the fee application bears the burden of submitting evidence in rebuttal to challenge the reasonableness of the fees requested). The Court does not see any reason to reduce the hourly rates claimed by Plaintiff and finds them reasonable based on the documentation provided.

---

[6] For example, Sparkman is a partner with JMBM and has been practicing trademark law since 2004, Berman is a partner and chair of the intellectual property department at JMBM, and Gibson is a partner with extensive experience litigating trademark cases. *Id.*

14

### b. Hours Billed

In support of the Motion, Plaintiff filed over 90 pages of billing records. Because of the voluminous nature of these records, the Court need not engage in a line-by-line analysis. *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (With a massive fee application, the district court "has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application."); *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation."). The Court applies that discretion here and finds that a 5% deduction is reasonable given how extensively this case has been litigated. The modified lodestar that the Court applies is **$430,123.19** [452,761.25 x 0.95].

### c. Expert Fees

Plaintiff seeks an award of expert fees for the financial report by Mr. Vickery. In *West Virginia Univ. Hosps. v. Casey*, 499 U.S. 83, 86 (1991) *abrogated in part on other grounds by* Pub. L. No. 102–166, Title 1, § 113(b), 105 Stat. 1075, 1079 (1991), the Supreme Court held that a party cannot recover expert witness fees as part of its attorney's fees unless there is explicit statutory or contractual language providing for this recovery. Courts in this Circuit have held that "attorney's fees under the Lanham Act may also include reasonable costs that the party cannot recover as the prevailing party" as long as such costs are reasonably incurred. *BoxNic Anstalt v. Gallerie degli Uffizi*, No. CV-18-1263-PHX-DGC, 2020 WL 2991561 at *2 (D. Ariz. June 4, 2020); *see also Dropbox, Inc. v. Thru Inc.*, No. 15-CV-01741-EMC, 2017 WL 914273, at *1 (N.D. Cal. Mar. 8, 2017), *aff'd*, 728 F. App'x 717 (9th Cir. 2018) (awarding reasonable expert witness fees of $162,936.00 under § 1117(a)).

Plaintiff hired Mr. Vickery, a financial expert, to create a report that analyzes profits and damages in this matter. Motion at 24, Exhibit AH. After a review of the billing invoice, the Court finds the cost to be reasonable. Defendant, which has not responded to the expert costs, has provided no basis for the Court to conclude that this amount was unreasonable.

Accordingly, the Court grants Plaintiff's expert fees of $35,660.75.

## VI. CONCLUSION

For the stated reasons, Plaintiff's motion for equitable relief and attorneys' fees and costs is granted. Plaintiff Paige is awarded **$2,572,667.89** in disgorgement of profits, **$430,123.19** in attorneys' fees and costs, and **$35,660.75** in expert fees.

A judgment to that effect will issue.

Dated: July 10, 2024

_____
Hernán D. Vera
United States District Judge

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 6. Representation Statement

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form06instructions.pdf

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

Shop Paige LLC

Name(s) of counsel (if any):

Brian A. Bloom
Michael Alan Trauben

Address: 910 Franklin Avenue, Garden City, NY 11530

Telephone number(s): 212-574-0350; 310-856-9705

Email(s): bbloom@tarterkrinsky.com; mtrauben@singhtraubenlaw.com

Is counsel registered for Electronic Filing in the 9th Circuit?   ● Yes   ○ No

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

Paige, LLC

Name(s) of counsel (if any):

Jessica Bromall Sparkman; Lena Streisand; Rod S. Berman; Stanley M. Gibson

Address: 1900 Avenue of the Stars, 7th Floor, Los Angeles, CA 90067

Telephone number(s): 310-203-8080

Email(s): jsparkman@jmbm.com; Lstreisand@jmbm.com; rberman@jmbm.com;

*To list additional parties and/or counsel, use next page.*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

**Form 6**                                       1                                  New 12/01/2018

Continued list of parties and counsel: *(attach additional pages as necessary)*

**Appellants**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit?   ○ Yes   ○ No

**Appellees**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 6**                                                2                                             *New 12/01/2018*